UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

AISLINN WILLIAMS,

    Plaintiff,

v.                                                                                                          Civ. No. 21-909 GJF/KRS

KOMMUNIKARE THERAPY, P.C., et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendants' "Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim" ("Motion") [ECF 9]. The Motion is fully briefed. ECFs 18 (Response) & 21 (Reply). For the following reasons, the Court **GRANTS** the Motion and **DISMISSES** the Complaint **WITHOUT PREJUDICE WITH LEAVE TO AMEND**.

**I.  BACKGROUND**[1]

Plaintiff was hired by Defendant KommuniKare, a company that provides a range of therapy services,[2] to work as a speech pathologist. ECF 1 at 3. KommuniKare operates in Lea County, New Mexico, and is owned by Defendant Cobb. *Id.* at 2. Defendants Cobb and Roan serve as KommuniKare's directors. *Id.*

The Complaint alleges that, during Plaintiff's employment with Kommunikare, Defendant Roan repeatedly made unwanted sexual comments toward Plaintiff and sexually assaulted her. *Id.* at 3–6. After each of these interactions, Plaintiff "advised Defendant Roan to stop and each time

---

[1] "[F]or the purposes of resolving" the Motion, the Court "accepts as true all well-pleaded factual allegations in [the Complaint] and views those allegations in the light most favorable to" Plaintiff. *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018) (citing *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006)).

[2] *See* KommuniKare Therapy Corporation, https://kommunikare.org/ (last visited May 4, 2022) (offering speech therapy, occupational therapy, and physical therapy).

the request was ignored." *Id.* Plaintiff asserts that it is her "reasonable knowledge and belief that Defendant Cobb knew or should have known of Defendant Roan's disregard for human rights like that of Plaintiff. As such, Defendant Cobb knew or should have known of the harassment and took no action to protect employees like Plaintiff." *Id.* at 4. Due to "the constant bullying and hostile work environment, sexual harassment, and unwanted touching, Plaintiff finally terminated her employment." *Id.* at 5. After Plaintiff resigned, Defendant Roan retaliated by "contacting the speech therapy board and claimed to the board that Plaintiff was using illegal substances." *Id.*[3]

In September 2021, Plaintiff filed her Complaint asserting Title VII claims for discrimination, hostile work environment, as well as race and sex discrimination. ECF 1 at 7. Plaintiff asserts that "Defendant Kommunicare [sic] and/or Defendant Cobb are vicariously liable for the … intentional torts by their agent, Defendant Roan, which were committed within the scope of employment." *Id.* at 6. In January 2022, Defendants filed the instant Motion, seeking dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that Defendants are not "employers" subject to Title VII liability. ECF 9 at 1.

## II. ISSUE

The sole question the Court must answer is whether the Complaint alleges facts that, if true, plausibly suggest Defendant KommuniKare is an "employer" within the context of Title VII.[4]

---

[3] Plaintiff alleges that she was addicted to methamphetamine prior to working for KommuniKare. *Id.* at 3. And "in order to rid herself of her drug habit, she checked herself into a drug rehabilitation facility where she underwent treatment for 33 days." *Id.* at 3. During her recruitment process with KommuniKare, Plaintiff disclosed her prior drug use and "Defendant Roan advised Plaintiff that Defendant KommuniKare is a healthy work environment that would not judge Plaintiff for her past." *Id.*

[4] Because Plaintiff accepts in her response briefing that Defendants Cobb and Roan should be sued in their official capacity, the Court does not address whether Defendants Cobb and Roan may be sued in their individual capacity under Title VII. ECF 18 at 4 ("At this time, Plaintiff will certainly seek leave to amend her complaint to name Defendants Cobb and Roan in their professional capacity.").

**III. PARTIES' ARGUMENTS**

Defendants argue that they are not "employers" under Title VII because KommuniKare has "never employed … fifteen (15) or more employees." ECF 9 at 3 (citing 42 U.S.C. § 2000e(b)). Defendants point out that the Complaint did not even allege that KommuniKare was an "employer" as defined by Title VII. *Id.* at 3–4. Because KommuniKare is not an "employer," Defendants insist that Plaintiff may not assert a Title VII claim against it. *Id.* at 4.

In opposition, Plaintiff asserts that the Court should consider KommuniKare an "employer," even if it has never employed at least fifteen employees, because another entity also owned by Defendant Cobb—RMS Foods Holdings LLC ("RMS Foods")[5]—has over 135 employees. ECF 18 at 2. Plaintiff propounds two theories under which she says the Court may aggregate the number of employees that RMS Foods employs with the number employed by KommuniKare to satisfy Title VII's fifteen-employee minimum. *Id.* at 5.[6]

First, Plaintiff contends that RMS Foods and KommuniKare are "joint employers." *Id.* (citing *E.E.O.C. v. Pac. Mar. Ass'n*, 351 F.3d 1270, 1275 (9th Cir. 2003)). Plaintiff says the two entities should be considered joint employers because Defendant Cobb owns them both, the entities are registered at the same address with the New Mexico Secretary of State, and because both "businesses are very much intermingled." ECF 18 at 5. Second, and alternatively, Plaintiff argues that RMS Foods and KommuniKare are an "integrated enterprise." *Id.* at 17 (citing *Anderson v. Pac. Mar. Ass'n*, 336 F.3d 924, 929 (9th Cir. 2003)). Plaintiff asserts that the two entities should be considered an "integrated enterprise" because she attended several work

---

[5] RMS Foods operates a food production facility that produces Boca Burger products (a brand of plant-based meat alternatives) for Kraft Foods, Inc. *See* ECF 18 at 2–3; *see generally* Hobbs News-Sun, RMS foods – the maker of Boca products – using clean energy to save (Oct. 11, 2021), https://www.hobbsnews.com/2021/10/11/rms-foods-the-maker-of-boca-products-using-clean-energy-to-save/; BOCA, https://www.bocaburger.com/products (last visited May 4, 2022).

[6] The Complaint makes no mention of RMS Foods or any other entity besides KommuniKare. *See* ECF 1.

3

meetings at RMS Foods's place of business, she was paid and received benefits through RMS Foods, and because Defendant Cobb owns both RMS Foods and Defendant KommuniKare. *Id.* at 7–8. None of these factual allegations appear in the Complaint, an omission that Defendants emphasize in their reply brief. ECF 21 at 4–5.

## IV. RELEVANT LAW

### A. Federal Rule of Civil Procedure 12(b)(6)

"In an ordinary civil action, the Federal Rules of Civil Procedure require only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Put otherwise, "the complaint must say enough to give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005)). Failure to provide sufficient notice may result in dismissal of a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

"To survive a Rule 12(b)(6) motion," *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020), a claim for relief must "contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1195 (10th Cir. 2018) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012)). But "'legal conclusions' as well as '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,'" are not "entitled to the assumption of truth." *Alpenglow,* 894 F.3d at 1195 (quoting *Iqbal*, 556 U.S. at 678–79). And the Court will only "consider facts alleged in the complaint itself" when evaluating its sufficiency. *Smallen v. W. Union Co.*, 950 F.3d 1297, 1305 (10th Cir. 2020) (citing *Emps.' Ret. Sys. of Rhode Island v. Williams Companies, Inc.*, 889 F.3d 1153, 1158 (10th Cir. 2018)); *see also Carter v. Daniels*, 91

F. App'x 83, 84–85 (10th Cir. 2004) (unpublished) ("'When ruling on a Rule 12(b)(6) motion, the district court must examine only the plaintiff's complaint. The district court must determine if the complaint alone is sufficient to state a claim; the district court cannot review matters outside of the complaint.'" (quoting *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991))). In short, the Court must "'assume the veracity' of the well-pleaded factual allegations 'and then determine whether they plausibly give rise to an entitlement to relief.'" *Alpenglow,* 894 F.3d at 1195 (quoting *Iqbal*, 556 U.S. at 679).

### B. "Employer" Under Title VII

Under Title VII it is unlawful for an "employer":

(1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1)-(2). Importantly, the term "employer" is statutorily defined as "a person engaged in an industry affecting commerce who has *fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year*." 42 U.S.C. § 2000e(b) (emphasis added).[7]

A "person," however, is not subject to Title VII liability if that "person" does not meet the statutory definition of an "employer." *See Castille v. Compliance Sols. Occupational Trainers, Inc.*, 57 F. App'x 842, 843–844 (10th Cir. 2003) (unpublished). Thus, for the Complaint to

---

[7] The term "person" refers to "one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees in cases under Title 11, or receivers." 42 U.S.C. § 2000e(a).

5

withstand a motion to dismiss, it must have alleged facts that if true plausibly suggest that the defendant is an "employer" as defined by Title VII. *Kongwa v. Enter. Sols., Inc.*, No. Civ. 20cv1152 RB/KK, 2021 WL 3033311, at *3 (D.N.M. July 19, 2021) (quoting *Dunn v. Tutera Grp.*, 181 F.R.D. 653, 656 (D. Kan. 1998)).

The Tenth Circuit has recognized that "[i]n some circumstances," the Court may "treat separate entities as a joint or single employer for purposes of determining the threshold number of employees required for an employer to be subject to suit under Title VII." *Avington v. Metro. Tulsa Urb. League*, 603 F. App'x 662, 664 (10th Cir. 2015) (unpublished) (citing *Knitter v. Corvias Mil. Living, LLC,* 784 F.3d 1214, 1225-27 (10th Cir. 2014)). Under the "joint employer" test, "two entities are considered joint employers if they 'share or co-determine those matters governing the essential terms and conditions of employment.'" *Knitter*, 758 F.3d at 1226 (quoting *Bristol v. Bd. of Cnty. Com'rs of Cnty. of Clear Creek*, 312 F.3d 1213, 1218 (10th Cir. 2002)). To determine whether entities are joint employers the Court must assess factors such as the ability to promulgate work rules and assignments, set conditions of employment (i.e., compensation, benefits, and hours), day-to-day supervision of employees (e.g., employee discipline), control of employee records (i.e., payroll, insurance, and taxes), and the right to terminate the employee. *Id.* (quoting *Butterbaugh v. Chertoff*, 479 F. Supp.2d 485, 491 (W.D. Pa. 2007)). Most important to this analysis is the last factor—the right to terminate the employment relationship. *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1324 (10th Cir. 2004).

For its part, the "single-employer test"—sometimes referred to as the "integrated enterprise" test, *see, e.g.*, *Calvert v. Midwest Restoration Servs., Inc.*, 35 F. App'x 798, 801–02 (10th Cir. 2002) (unpublished)—permits "'a plaintiff who is the employee of one entity … to hold another entity liable by arguing that the two entities effectively constitute a single employer.'"

6

*Knitter*, 758 F.3d at 1226 (quoting *Bristol*, 312 F.3d at 1218). In the Tenth Circuit, courts must weigh four factors in considering whether two entities constitute a single employer: "(1) interrelations of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control." *Sandoval*, 388 F.3d at 1322 (citing *Bristol*, 312 F.3d at 1220). The most important factor is the third—centralized control of labor relations. *Id.*

"Although these two tests are sometimes confused, they differ in that the single-employer test asks whether two nominally separate entities should in fact be treated as an integrated enterprise, while the joint-employer test assumes that the alleged employers are separate entities." *Bristol*, 312 F.3d at 1218 (citing *Clinton's Ditch Coop. Co. v. NLRB*, 778 F.2d 132, 137–38 (2nd Cir. 1985)).

## V. DISCUSSION

The Court holds that the Complaint has not alleged facts sufficient to plausibly suggest that RMS Foods and Defendant KommuniKare are either joint employers or a single employer.[8] Moreover, even if the Court were to consider the additional facts Plaintiff forwarded in her response brief, which the Court ordinarily cannot do, *see Smallen*, 950 F.3d at 1305, the Court would consider these facts likewise insufficient.

### A. Plaintiff's Complaint

Looking to the four corners of the Complaint, the Court observes that RMS Foods is not *mentioned* in the Complaint. *See* ECF 1. Consequently, the Complaint alleges no facts about whether RMS Foods had the authority to terminate Plaintiff's employment with KommuniKare— the most important factor under the joint employer test. *See id.*; *see Sandoval*, 388 F.3d at 1324.

---

[8] For the purpose of its analysis, the Court assumes that Kommunikare does not qualify as an "employer"— absent the applicability of the joint or single employer tests—as neither the Complaint nor Plaintiff's briefing on the Motion assert that Kommunikare ever had fifteen or more employees. *See* ECFs 1 & 18.

7

And the Complaint likewise asserts no facts as to whether RMS Foods and KommuniKare had a centralized control of labor relations—the most important factor under the single employer test. *See* ECF 1; *see also Sandoval*, 388 F.3d at 1322.

### B. Plaintiff's Additional Facts

In her response briefing, Plaintiff introduced several new alleged facts:

- Defendant Cobb owns RMS Foods;
- RMS Foods employs over 135 employees;
- RMS Foods has the same place of business as Defendant KommuniKare;
- Plaintiff was hired by both Defendants Cobb and Roan;
- Plaintiff was managed by both Defendants Cobb and Roan;
- several meetings conducted during her employment with Defendant KommuniKare took place at RMS Foods's principal place of business;
- payroll was issued to Plaintiff by one of RMS Foods's employees.

ECF 18 at 2–3. Even if these facts had been alleged in the Complaint, however, they would still be insufficient to plausibly suggest that KommuniKare and RMS Foods were joint or single employers.

1. The Additional Facts Do Not Plausibly Suggest KommuniKare and RMS Foods Were Joint Employers

"An independent entity with sufficient control over the terms and conditions of employment of a worker formally employed by another is a joint employer within the scope of Title VII." *Knitter*, 758 F.3d at 1226 (quoting *Sizova*, 282 F.3d at 1330). To conduct this analysis, the Court considers (1) the right to terminate employment; (2) the ability to promulgate work rules and assignments; (3) setting conditions of employment; (4) day-to-day supervision of employees; and (5) control of employee records. *See id.*

Plaintiff's additional facts do not plausibly suggest that RMS Foods had sufficient control over the terms and conditions of her employment with KommuniKare. Although Plaintiff claims that RMS Foods had control over some of her employment records (i.e., payroll), Plaintiff has not

alleged that RMS Foods had the right to terminate her employment, promulgate work rules or assignments, set Plaintiff's conditions of employment, or supervise her. *See Ruggles v. CVR Energy, Inc.*, Case No. 2:20-cv-02652-HLT-TJJ, 2021 WL 29871720, at *1–2 (D. Kan. July 15, 2021) (rejecting joint employer argument where the plaintiff failed to include allegations suggesting that defendant had the ability to "terminate her employment or otherwise co-determine the essential terms and conditions of her employment.").[9]

### 2. The Additional Facts Do Not Plausibly Suggest KommuniKare and RMS Foods Were Single Employers

"Courts applying the single-employer test generally weigh four factors: '(1) interrelatedness of operation; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control.'" *Knitter*, 758 F.3d at 1227 (quoting *Bristol*, 312 F.3d at 1220)). The third factor—centralized control of labor relations—is the most important. *Sandoval*, 388 F.3d at 1322 (quoting *Bristol*, 312 F.3d at 1220).

Based on Plaintiff's additional allegations, three of the four factors might weigh in favor of finding that KommuniKare and RMS Foods are a single employer. It appears that KommuniKare and RMS Foods may have had at least some interrelated operations because payroll was processed through RMS Foods and the two entities operated out of the same location. *See Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1363 (10th Cir. 1993) (providing examples of evidence "routinely used to show interrelated operations"). Additionally, there may have been common management and ownership as Defendant Cobb apparently owned and managed both KommuniKare and RMS Foods.

Plaintiff, however, has not asserted any facts plausibly suggesting that the two businesses

---

[9] Although Plaintiff asserts that Defendant Cobb supervised her, ECF 18 at 3, she does not allege that he supervised her as an agent of RMS Foods.

had a centralized control of labor relations. Put another way, this factor asks "[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Frank*, 3 F.3d 1357 (citing *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983)); *Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 928 (5th Cir. 2021) (same). The Tenth Circuit has held that the "right to terminate employment" is the most important consideration in answering this question. *Sandoval*, 388 F.3d at 1323 (citing *Bristol*, 312 F.3d at 1219). Plaintiff has not alleged or even suggested that RMS Foods had the right to terminate her employment with KommuniKare. *See Sanford v. Main St. Baptist Church Manor, Inc.*, 449 F. App'x 488, 494 (6th Cir. 2011) (unpublished) (rejecting a plaintiff's aggregation argument brought under single employer theory because plaintiff failed to show that secondary entity had the authority to terminate plaintiff); *see also Perry v. Pediatric Inpatient Critical Care Servs., P.A.*, Civil Action No. SA-18-CV-404-XR, 2020 WL 1248263, at *13–14 (W.D. Tex. Mar. 16, 2020) (rejecting single employer argument where although secondary entity could request plaintiff's removal, the plaintiff's employer retained the sole right to terminate its employees); *c.f. Canon v. Bd. of Tr. of State Insts. of Higher Learning of the State of Mississippi*, 133 F. Supp.3d 865, 870 (S.D. Miss. Sept. 22, 2015) (rejecting single employer argument where the plaintiff's former employer maintained exclusive control over termination decisions). And Plaintiff has not alleged any facts suggesting that any of the other indicia of centralized control of labor relations existed as between KommuniKare and RMS Foods. *See Frank*, 3 F.3d at 1364 (observing that whether an entity controls hiring decisions or issues rules regarding employment practices are considerations for determining whether two entities share centralized control of labor relations).

## VI. CONCLUSION

In sum, because the Complaint does not allege that Defendant KommuniKare ever

employed at least fifteen employees and because the Complaint does not contain allegations that plausibly suggest that Defendant KommuniKare and RMS Foods were joint or single employers, the Complaint fails to state a claim upon which relief can be granted.

**IT IS THEREFORE ORDERED** that the Motion is **GRANTED,** and the Complaint is **DISMISSED WITHOUT PREJUDICE WITH LEAVE TO AMEND**. Plaintiff shall have until 30 days after the filing of this Memorandum Opinion and Order to file an amended complaint to the extent that she can make the necessary factual allegations consistent with the requirements of Federal Rule of Civil Procedure 11(b).

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*